IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 06-cv-00381-PSF-CBS

PURE RESEARCH PRODUCTS, L.L.C.,
a division of J.A. Sichel & Associates, Inc., a Colorado corporation,

    Plaintiff,

v.

ALLERGY RESEARCH GROUP, INC., a Florida corporation; and
NUTRICOLOGY, INC., a California corporation and wholly-owned subsidiary
of Allergy Research Group, Inc.,

    Defendants.

## ORDER ON DEFENDANTS' MOTION TO DISMISS

This matter comes before the Court on Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, or in the Alternative, Motion To Transfer Venue (Dkt. # 7), filed April 7, 2006.  On May 1, 2006, Plaintiff Pure Research Products L.L.C. ("PRP") filed its response to defendants' motion (Dkt. # 28).  On May 16, 2006, Defendants Allergy Research Group and its wholly-owned subsidiary, Nutricology, Inc. (collectively "ARG") filed their reply to plaintiff's response (Dkt. # 32).  The motion is ripe for determination.

**I.    BACKGROUND**

Plaintiff's complaint in this action (Dkt. # 1) alleges claims for relief against defendants under Sections 43(a) and 32(1) of the Lanham Act, 15 U.S.C. §§ 1125(a) and 1114, under the Colorado Deceptive Trade Practices Act, C.R.S. § 6-1-101,

*et seq.*, and under the common law of unfair competition, seeking damages as well as a claim for declaratory and injunctive relief (Complaint, ¶¶ 54-77).  Plaintiff alleges that Defendant Allergy Research Group is incorporated in Florida, that Defendant Nutricology is incorporated in California, and both have their principal places of business in Alameda, California (*id.*, ¶ 2).  Nonetheless, plaintiff alleges that defendants transact business in Colorado, committed the alleged tortious actions in Colorado, and infringed plaintiff's trademarked product, a dietary supplement known as "Del-Immune V" ("DIV"), in Colorado (*id.*, ¶ 5).  Thus, plaintiff asserts personal jurisdiction exists in Colorado and venue in this district is proper pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(a) (*id.*, ¶ 6).

Plaintiff asserts that its product uses a specific strain of yogurt bacteria called *lactobacillus rhamnosus*, available only from a producer in Russia with which plaintiff has an exclusive arrangement (*id.,* ¶ 8).  The essence of plaintiff's complaint is that after apparently aborted negotiations between plaintiff and defendants to engage in a business arrangement whereby defendants would market plaintiff's trademarked dietary supplement, Del-Immune V, defendants nonetheless engaged in marketing their own version of a similar product using the name "Delta Immune," later changed to "Russian Choice Immune" or "RCI," and engaged in other conduct that may have caused confusion in the marketplace as to the origins of the defendants' product.  Plaintiff alleges that defendants began to market and sell RCI after the plaintiff supplied them with samples of the active ingredient *lactobacillus rhamnosus* during the negotiations.  Plaintiff also alleges that the defendants "wrongly and illegally manipulated, and

2

continue to manipulate, web-based search words, including metadata," in order to capture inquiries intended for actual or prospective customers of DIV (*id.*, ¶ 31), and to include terms confusingly similar to DIV (*id.*, ¶ 47).

## II.     DEFENDANTS' MOTION AND PLAINTIFF'S RESPONSE

Defendants motion asserts that this case must be dismissed pursuant to Rule 12(b)(2) of the F.R.Civ.P., because personal jurisdiction over them does not exist, or pursuant to Rule 12 (b)(3) because venue is not proper in the District of Colorado. Alternatively, they request this case be transferred to the Northern District of California for the convenience of the parties pursuant to 28 U.S.C. § 1404(a).

Defendants argue that they are not subject to an exercise of general jurisdiction in Colorado because they do not have "continuous and systematic contacts" with the state and exercising general jurisdiction would be unreasonable (Motion at 3-9). They also argue that the exercise of specific jurisdiction is not available because they have not purposely directed their activities to residents of Colorado, the claims against them do not arise from activities in Colorado and assertion of personal jurisdiction in Colorado would be "unreasonable and unfair." (Motion at 9-14).

In support of the motion defendants have submitted, *inter alia*, the declaration of Fred Salomon, the companies' president and director of operations, who attests that the companies do not own property in Colorado, do not employ any individual who resides in Colorado, and do not send agents to Colorado for business purposes other than to attend medical conventions (Declaration of Fred Salomon in Support of Motion (Dkt. # 9), ¶¶ 2-3). The declaration also states, however, that defendants make sales

3

of their products to customers located in Colorado, either via telephone sales or over the internet or through "resalers" who purchase from defendants and sell in Colorado (*id.*, ¶ 9). The declaration states that in 2005 defendants made sales of $323,000, or about 2% of its overall annual sales, in Colorado, and in 2004 made sales of $273,637, or about 1.8% of its overall sales, in Colorado (*id.*, ¶¶ 11, 12).

Plaintiff responds that at least specific jurisdiction over defendants exists in Colorado as defendants purposefully directed their business activities to Colorado and that the trademark infringement arises out of those activities. Plaintiff points to the above sales figures in the Salomon Declaration, and to that fact that defendants' website is an "active" website that permits customers in Colorado, as well as elsewhere, to place orders for products to be delivered in Colorado (Plaintiff's Response at 4-5). Plaintiff also shows that defendants promoted their products on the website by announcing their intent to attend a nutrition conference scheduled for Broomfield, Colorado in July 2006 (*id.* at 5). Based on an affidavit submitted by John Sichel, the founder and managing director of plaintiff, it appears that defendants also made a series of purchases of DIV powder from plaintiff between March 2004 and November 2004, submitting purchase orders and payments to plaintiff in Colorado (Affidavit of John Sichel, attached to Plaintiff's Response, ¶¶ 10, 13). According to Sichel, the purchased powder was apparently used by defendants to test the efficacy of the product and produce "facsimile capsules" (*id.*, ¶¶ 9, 11). According to the complaint, it was during or shortly after these sales that defendants commenced sales of Delta

4

Immune (*id.*, ¶¶ 25,30) leading to the issuance of a cease and desist letter from plaintiff dated December 1, 2004 (*id.*, ¶ 33).

### III.  APPLICABLE LEGAL STANDARDS

Once a court's personal jurisdiction over a defendant has been challenged, "the plaintiff has the burden of proving jurisdiction exists."  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  When a district court rules on a F.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction based on affidavits and other written materials, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion.  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 456 (10th Cir. 1996).

In deciding such a motion to dismiss, "[t]he allegations in the complaint must be taken as true to the extent that they are uncontroverted by the defendant's affidavits." *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990).  When the parties present conflicting affidavits, "all factual disputes are resolved in the plaintiff's favor and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.*; *see also Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987).  "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The availability of personal jurisdiction is determined in accordance with Colorado's long-arm statute, C.R.S. s 13-1-124, *et seq.* That statute "extend[s] the personal jurisdiction of Colorado courts to their maximum limits permissible under the United States and Colorado Constitutions." *Scheuer v. Dist. Court*, 684 P.2d 249, 250 (Colo. 1984). Colorado courts employ a two-pronged analysis in making jurisdictional determinations. *Wise v. Lindamood,* 89 F. Supp. 2d 1187, 1189 (D. Colo 1999). First courts determine whether the exercise of jurisdiction is sanctioned by Colorado's long-arm statute, and second, whether such exercise comports with due process under the United States Constitution. *Id.*

## IV. ANALYSIS

### A. Personal Jurisdiction in District of Colorado

In this case, plaintiff first argues that defendant is subject to specific jurisdiction, which "is predicated upon a defendant's minimum contacts with the forum which give rise to the cause of action." *Wise v. Lindamood*, *supra*, 89 F. Supp. 2d at 1190. Under specific jurisdiction, the "touchstone inquiry is whether the defendant has purposefully directed its activities toward the forum jurisdiction and whether the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *Id.* (internal quotation marks and brackets omitted). Additionally, the Court must "consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *Omi Holdings Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (*quoting Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 113 (1987)).

Here, it is alleged that the defendants made contact with the plaintiff, a Colorado company, and engaged in negotiations to do business with plaintiff in relation to a trademarked product apparently known to the defendants to contain an ingredient as to which plaintiff had exclusive rights.  The defendants thereafter purchased product from plaintiff containing the exclusive ingredient by placing orders and making payments to plaintiff in Colorado.  Although they used plaintiff's samples to test, and apparently develop a similar product, no formal business arrangement resulted according to plaintiff, although defendants dispute this assertion (*see* Salomon declaration, ¶ 16).  Defendants thereafter made sales of the similar product, using a similar but slightly different product name, alleged by plaintiff to cause confusion with its own product.  Defendants made sales of the product in the State of Colorado. In part, the sales were made by defendants through their website.

Although the parties here argue over whether the employment of the website creates personal jurisdiction, it would appear that even without the sales made over the website there is a basis for the exercise of specific jurisdiction in Colorado. Nonetheless, the Court addresses the issue regarding the defendants' website.

In *Wise v. Lindamood*, *supra*, Chief Judge Lewis T. Babcock, in considering whether general personal jurisdiction existed in Colorado in a copyright and trademark infringement action, drew a distinction between the operation of an interactive website and a "passive" or "moderately interactive" website, finding that either alone is "insufficient to confer general personal jurisdiction."  89 F. Supp. 2d at 1194.  He stated, however, that "an 'interactive' Web site, together with other contacts, can meet

7

the minimum jurisdictional threshold." *Id.* Chief Judge Babcock found that the defendant's operation of what he described as a "moderately interactive" website, coupled with other contacts supplied sufficient grounds to exercise general personal jurisdiction.

In *Boppy Co. v. Luvee Products Corp.*, 72 U.S.P.Q. 2d. 1577 (D. Colo. 2004), another judge of this district further discussed the evolving distinction between "interactive" and "passive" websites for purposes of establishing minimum contacts. *See* 72 U.S.P.Q. 2d. at 1579-80. Judge Krieger found that a website that allows "users to browse available fabric choices and place on-line orders, . . . functions much like a physical store" and provides minimum contacts under the relevant test. While the court ultimately found a lack of personal jurisdiction over the defendant, that was due to the absence of any other business activities in Colorado besides the one sale in the state to the plaintiff's attorney. *Id.* at 1580-81.

In the instant case, resolving all factual disputes in favor of the plaintiff as this Court must do, the facts appear to show that defendants operate an interactive or moderately interactive website that allows customers to order the alleged infringing product. In addition, as noted above defendants otherwise seek to, and do in fact, conduct business in the State of Colorado by purchasing products here, attending conferences and selling their products to re-sellers in Colorado. Further, unlike *Boppy*, where only one sale of the offending product occurred, defendants' sales in Colorado amounted to $323,000 in 2005 and $273,627 in 2004. Thus, this Court finds that the first two prongs of the test for personal jurisdiction are met here–the defendants

purposefully directed their activities at residents of the forum and the plaintiff's infringement claim arises out of or relates to those activities.

Defendants argue that the plaintiff's assertion of personal jurisdiction over it in Colorado is not reasonable or fair (Motion at 11-14). Once a plaintiff has made a *prima facie* showing of sufficient minimum contacts to support jurisdiction, a court must then consider whether the exercise of personal jurisdiction "offends 'traditional notions of fair play and substantial justice.'" *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 113 (1987). Where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, it must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Burger King Corp. v. Rudzeneicz*, 471 U.S. 462 (1985).

Five factors are relevant to this inquiry: 1) the burden on the out-of-state defendant; 2) the forum state's interest in resolving the dispute; 3) the plaintiff's interest in receiving convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental social policies. *OMI Holdings,* 149 F.3d at 1095.

Defendants contend that Colorado is an inconvenient and burdensome forum because their records and witnesses are located in California. This court recognizes that the cost of litigating in Colorado may be significant for defendants. However, this Court also notes that defendants have availed themselves of the right to pursue

business in Colorado and any burden placed upon them to litigate here is part of the obligation connected to doing business in this state. In addition, contrary to defendants' suggestion, plaintiff plans to produce more than one witness at trial, and plaintiff's response indicates that eight residents of Colorado will be called as witnesses (Plaintiff's Response at 12). Defendants' motion suggests that a similar number of witnesses will be called to argue their position. Thus, the burden on the defendants to litigate in Colorado is no more significant than the burden on the plaintiff to litigate in California.

The second factor, Colorado's interest in adjudicating the suit, weights in favor of the plaintiff and exercising jurisdiction. "States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings*, 149 F.3d at 1096. Colorado has an interest in helping citizens such as plaintiff to obtain relief from an out-of-state corporation that has purposefully availed itself of the benefit of purchase from, and sales in, Colorado.

The fourth factor which "examines whether the forum state is the most effective place to litigate the dispute" *(OMI Holdings*, 149 F.3d at 1097) weights in favor of the plaintiff. An important consideration under this factor is whether jurisdiction is necessary to prevent piecemeal litigation. *Id.* Here, the plaintiff asserts claims under both Colorado law and Federal law. Although a federal court in California will likely be able to hear the plaintiff's Colorado state law claims, exercising jurisdiction in Colorado is appropriate to avoid any inconsistent application of the law.

The third and fifth factors are not pertinent to the instant case. The third factor "hinges on whether the Plaintiff may receive convenient and effective relief in another forum." *Id.* at 1097. Plaintiff admits "the relief available should be similar in nature and extent, regardless of whether the action is brought here or in California." Plaintiff's Response at 14. Similarly, the fifth factor, furthering fundamental social policy, will occur whether the claim is brought in California or Colorado.

While it is true that this case could be litigated in California where defendants maintain their principal place of business, there is no compelling argument that the exercise of jurisdiction in Colorado is unreasonable or unfair. Because the exercise of specific jurisdiction is proper, there is no need to analyze plaintiff's arguments related to general jurisdiction.

### B.   Venue in District of Colorado

Defendants also assert that venue of this case does not lie in Colorado solely because there is no personal jurisdiction over them in Colorado (Defendants' Motion at 14). Venue under the trademark statute is proper in "any judicial district where the defendant resides" or alternatively, "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(a). However, as defendants acknowledge, for purposes of the venue statute they "reside" in any judicial district in which they are subject to personal jurisdiction, citing to *OpenLCR.com, Inc. v. Rates Technology, Inc.* 112 F. Supp. 2d 1223, 1230 (D. Colo. 2000) and *Dart Int'l, Inc., v. Interactive Target Sys., Inc.*, 877 F. Supp. 541,

546 (D. Colo. 1995).  Having found that personal jurisdiction over defendants may be exercised in Colorado, their motion to dismiss for lack of venue must also be denied.

### C.    Transfer of venue for convenience of parties

Alternatively, defendants argue that venue of this case should be transferred to the Northern District of California, pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses.  In support of their request to transfer venue, defendants cite to nine factors that the Tenth Circuit recognizes as relevant in considering a venue transfer motion citing to *Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991) (Defendants' Motion at 15).  They argue that three of the factors are applicable in this case (*id.* at 16-19).  The Court does not find that the consideration of the applicable factors supports a change of venue in this case.

First, the plaintiff's choice of forum should be given some weight here, since plaintiff did not randomly choose Colorado for the filing of this suit as plaintiff is located in this state and some of its witnesses reside in Colorado.  Second, the accessibility of witnesses may also favor venue in Colorado.  Defendants assert that their witnesses reside in California (Salomon Declaration at ¶ 6), and they believe plaintiff is a "one person operation" conducting business from Mr. Sichel's home (Defendants' Motion at 18).  Even if plaintiff were a "one-person operation" that would not defeat its choice of venue.  The Sichel Affidavit, however, identifies several other witnesses including nonparty witnesses found in Colorado, individuals who were allegedly solicited to buy the alleged infringing product or accessed defendants' website, and potential expert witnesses (Sichel Affidavit, ¶ 25).  By contrast, it appears that all the witnesses

potentially to be called by defendants are employees of the defendant companies who are within the control of defendants (Salomon Declaration, ¶ 6), and who can be brought to Colorado, if necessary.

Finally, this Court does not agree that this case would necessarily be resolved more expeditiously in California. Although the statistics of median time from filing to trial cited by defendants may be valid, they do not demonstrate a meaningful variance between the two districts. In any event, the statistics do not necessarily apply to the rapidity with which any particular court can advance this case to trial. This Court believes it could bring this case to trial in an efficient manner. Accordingly, the motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is denied.

## V.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, or in the Alternative, Motion to Transfer Venue (Dkt. # 7), filed April 7, 2006, is DENIED.

DATED:  September 28, 2007

BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge